So I believe we're now ready to proceed with argument. The first case is Siddiqui v. Rocheleau. Good morning, your honors. May it please the court, my name is John Einhorn, and I represent the appellant in this case, Faz Siddiqui. This is an unusual case. The basis of this case is a single telephone call, an unanswered telephone call, upon which no message was left. A single unanswered telephone call made, granted late at night, but it went directly to voicemail, and my client never denied he made that, left that message. Prior to that message, the parties in this case, that is to say the appellant and the complaining witness, had virtually no contact for 10 years. Based upon that call or that message, the complainant went to the West Hartford police, and the defendant in this case obtained a warrant for second degree harassment, which is a misdemeanor charge. That warrant has never been served on my client because he is an English citizen. He was here at the time on an F-1 student visa, and he can't return here now or he'll be incarcerated as that warrant was lodged with is outstanding, and it is yet to be served. This case was brought, as you can see, essentially a 1983 action brought in district court in Connecticut. Our position is that there was no probable cause or even arguable probable cause for the warrant. The defendant, the appellee, cites numerous other reasons beside that unanswered telephone call for probable cause or arguable probable cause. We disagree in that some of those reasons, frankly, are protected speech under the First Amendment and can't be used to show mens rea or for any basis against the claim by the defendant officer is that an investigator made calls on my client's behalf to the complainant. Excuse me. Do you have one more minute of your initial three? Thank you. That the investigator made calls to the complainant's workplace, and that issue, in fact, is disputed. But nonetheless, those workplace calls, we believe also, even if my client had made them and he denies that or caused them to be made, which he denies, even so, that's protected speech. The defendant, in this case, the appellee, basically based the warrant on speculation that the complainant says she's being harassed or was harassed by my client and cites also numerous spam calls or telephone calls that cannot be shown to have come from my client. Now, in that regard, and in some of those, with regard to some of those issues I've been talking about, and with regard to the other bases of probable cause claimed by the appellee, we sought earlier to submit three exhibits, and we would seek an opportunity to submit them post-argument also, but basically... John, can I just jump in and ask about your First Amendment argument? Because as I understand it, you say the calls to the complainant's employer were protected by the First Amendment, assuming that your client made them. But those calls are not being criminalized. They're just being used as circumstantial evidence to add to the probable cause. And I'm wondering how the First Amendment is implicated. Well, they're being used... Yes, I agree. They're being used to show his mens rea toward having done the alleged crime in question. Connecticut law, and we've cited in our brief, there's a whole string of state cases that preclude the use of protected speech in that regard, and that's the basis of our argument on that. We also deny that he made them, of course. This is Judge Park. Aren't those cases, they have to do with using the content of the calls, right? Not the fact of the call. I believe that's correct. They talk about using anything of the content. In our case, it's the mere fact that they're claiming that the mere fact that these cases were made. Frankly, we don't see how those cases add anything to the finding of probable cause. Those cases, they might be somehow actionable and civil for defamation, for example, if they're untrue statements made by my client, although he denies them. But we don't believe they should be used in any way to bolster the finding of probable cause. The probable cause is really based mostly on speculation. These are parties, the officer in the warrant talks about a turbulent history between the parties. There's no history between the parties. They had a romantic relationship 10 years earlier that ended it, and then she looked on the internet to check him out. He apparently found out about that, and so he left that late night call inquiring, or ostensibly inquiring what was going on, but never left a message. And so it's that single call really that formed the basis that we think the whole matter was blown out of proportion. The government... Under Connecticut call, isn't even one call enough? It would be. Yes, Your Honor. I would absolutely agree. If there were substance to the call, and there's a plethora of case law, obviously, including that case in Newtown, of course, Connecticut, but there was no content left on this answering machine. It was just he never left a message, it was never... No one picked up. So there's, contrary to the cases that would allow one call, there's no content in this that would constitute actionable harassment under Connecticut statute. But why do you keep saying it's one call? This is Judge Sullivan. I mean, there's a variety of facts that are set forth in the affidavit, and it's not limited to one call. It's a lot of statements from the target of calls and her employers, and also a private investigator, all of which can be traced back to, in some way, your client, right? Well, I agree with Your Honor. That is, in fact, set forth in the affidavit, and the trial judge talked about those. But that's why I think this is a case that really belonged on summary judgment or a trial, because a lot of those facts are disputed, and very strongly disputed, talking about the private investigator issue that Your Honor just mentioned. The private investigator has... We have an exhibit that we would seek to offer post-hearing, where the investigator denies that she made those calls. So I think that's a material fact if it, again, went to summary judgment, which would be in dispute. In this case, the finding of qualified immunity, for example, is a mixed question of law and fact. Excuse me. You have one minute left of your total time. Thank you. I just wanted to touch quickly on the favorable disposition requirement. Under the law, obviously, under many of the causes of action that were brought in the district court, a favorable disposition for the appellant is required. In this case, it's just not possible. My client is out of the country. In fact, Connecticut law isn't totally clear that that's required. I don't believe New York law is either. But Connecticut law isn't clear that that's totally required. Under these circumstances, we don't believe it was feasible. He'd have to turn himself in, be arrested, be incarcerated, fight this. In this misdemeanor harassment charge, we don't believe it could be successfully prosecuted. So on that basis, we'd like to see this matter go back to the trial court and have it at least sent to have the issues determined by summary judgment or trial. Thank you, Mr. Einhorn. Thank you, Your Honor. May it please the court. My name is James Tallberg, and I represent Lieutenant Eric Rosalieu, the appellee, who at the time of the events that issue in this case was a detective sergeant in the West Hartford Police Department. Your Honor, this case is about harassment by the plaintiff, Fayez Siddiqui, of a woman by the name of Irem Rondua. The district court's ruling granting Lieutenant Rosalieu's motion to dismiss the plaintiff's second amended complaint should be granted for at least, should be affirmed rather, for at least four reasons. First, the search and seizure and arrest warrants at issue concerning the plaintiff's harassment of Ms. Rondua were supported by probable cause. At the very least, the warrants were supported by arguable probable cause, which entitles Lieutenant Rosalieu to qualified immunity. And the existence of probable cause vitiates all of plaintiff's claims, not just his fourth amendment challenge to the warrants, but also his claims alleging a violation of his right to travel, his false arrest, and his intentional infliction of emotional distress claims. And finally, the plaintiff cannot demonstrate a favorable termination because the arrest warrant was not served. So if I may turn to probable cause, as the district court correctly held at page 20 of its ruling, that's at A147 of the appendix, Lieutenant Rosalieu conducted an extensive investigation before applying for the search warrant. As your honors have noted, that included interviews with at least seven witnesses. And you don't have to take the court's word for it. The plaintiff attached to the complaint, the arrest warrant as an exhibit, it can be found at pages A104 through A108 of the appendix. That investigation started with an interview of the complainant, Ms. Rondua, who expressed a deep concern for her safety, as she believed Mr. Siddiqui was unpredictable and obsessed with her. And it was not just the plaintiff, as your honors have noted, this trouble started in August, 2012, with a nine- Excuse me, do you have one more minute of your initial three? Thank you. Yes, the trouble started really in August, 2012, with a nine-page, rather emotional email to Ms. Rondua from the plaintiff, which he acknowledges sending, but not only to her, but to friends and family on the week of her wedding. And he has acknowledged, the plaintiff, that he was told that Ms. Rondua and her mother, that he had been warned not to contact her. Detective Rocheleau interviewed additional witnesses to corroborate the claims made by Ms. Rondua. As your honors have noted, he spoke with coworkers at Bloom Shapiro, where she worked, and they provided Detective Rocheleau with a three-minute, 38-second voicemail of a gentleman with an English accent, who reported a variety of personal and professional misdeeds allegedly committed by Ms. Rondua, and basically tried to have her fired. Those coworkers also told Detective Rocheleau that there were other contacts made from Molly Monaghan, a private investigator, and Detective Rocheleau connected Ms. Monaghan to the plaintiff. Ms. Monaghan told Detective Rocheleau that she had been hired by a, quote, crazy guy with an English accent, who asked her to contact Ms. Rondua's employer. The detective also spoke with Ms. Rondua's aunt and uncle, and the uncle in particular, Ahsan Usman, told Detective Rocheleau that he felt responsible for having tried to arrange the relationship between the plaintiff and Ms. Rondua, but it didn't work out. And so, based on all these facts, Detective Rocheleau finally confirmed himself with Mr. Siddiqui that on February 25, 2015, he placed that phone call at 1.36 a.m. to Ms. Rondua. With regard to the phone calls to the employer, the first one there was a voice changer used, so there was no, there was never any identification of the voice on that call with the plaintiff. Am I right about that? Judge Livingston, you're referring to the voicemail that was left at the employment, place of employment? Yes. Uh, you're correct. We couldn't positively identify that because many of the calls Ms. Rondua received were from spoofed or blocked numbers, and Lieutenant Rocheleau made rational inferences from the circumstantial evidence that is described in the arrest warrant affidavit. I think I was referring to the phone call. I'm asking what is the basis other than an English accent for associating the calls to the employer with the plaintiff? What did the warrant say, the affidavit say about that? Oh, yes, Your Honor. Well, in particular, the caller to Ms. Rondua's place of employment parroted statements that had been contained in Mr. Siddiqui's nine-page email to Ms. Rondua about her personal misdeeds, alleged. And so, there was a direct rational inference that could connect the email and the caller to the place of employment. Thank you, Mr. Talbert. Yes. So, the facts were not in dispute, Your Honors, based on the existence of probable cause as found by a neutral magistrate who approved the arrest and search warrants. There was an abundance of probable cause as properly held by the district court. And for all of the foregoing reasons, unless there are additional questions, at this point, what I would ask is, based on the statements made on the record here today and in our brief, if there are no additional questions, we respectfully request that you affirm the district court's ruling dismissing this case. Thank you. We will hear rebuttal. Thank you, Your Honor. On rebuttal, I think it's significant to discuss the answers to the question that Your Honor had posed with regard to the employer. First of all, even assuming that that was my client on the phone, I don't see how that constitutes probable cause. At the very least, it may be defamatory if, in fact, he did say those things. But I don't see how that can be harassment. And certainly, he didn't make it to her. Now, the Connecticut law doesn't require that it require a direct statement to the so-called victim. But in this particular case, as Appellee's they want to infer that because the content was similar to a three-year earlier email, that it must have been him. Why isn't that a reasonable inference? Well, it's three years earlier. The parties had no connection. And as a matter of fact, I don't believe that at the trial level that that nine-page email was even submitted as an exhibit. It poses one of the many factual disputes, I believe, as to why this case should go to summary judgment or at least determined by summary judgment. You have one more minute. Thank you. With regard to the private investigator, that too is a disputed issue because the private investigator again changed her mind and said, no, it wasn't an English gentleman. It wasn't Mr. Siddiqi. He wasn't my client. And so you've got those things. And finally, with regard to the aunt and uncle, that doesn't say anything at all. So basically, just that he felt responsible. So finally, what you've got in the end, and spoofed or blocked calls, that would be a stretch to impute scam calls to one particular person. We all get them all day long, I think. So in the end, what's left is one call that was unanswered and went to voicemail. And I suppose you could say the complainant's feeling that somehow she was being harassed after this long relationship and an email three years earlier. And we don't believe that constitutes probable cause. But at the very least, in order to determine qualified immunity or even probable cause or arguable probable cause, and I'm not even sure such a concept exists, that would have required a determination of disputing facts and dispute and is not Thank you, Mr. Talberg. Thank you both for your arguments, and we will take the matter under advisement. Thank you, Your Honor. Thank you, Your Honors.